■ DOLORES SHARKEY, as Executrix, et al., Respondents, v LOCUST VALLEY MARINE, INC., et al., Appellants. — In a wrongful death action, defendants appeal from a judgment of the Supreme Court, Nassau County (Young, J.), entered December 30, 1981, which is in favor of the plaintiffs and against them, upon a jury verdict. Judgment reversed, on the law, and new trial granted, with costs to abide the event. The decedent, John Sharkey, was the owner of a Pearson Commander sailboat which he stored during the winter months at a boat yard operated by defendant Locust Valley Marine, Inc., the tenant of defendant C.S.G. Realty Corp. On the morning of May 10, 1978, the decedent worked on his boat in preparation for its launching later that day. Later that same morning, the decedent fell while walking down a ramp from the dock to the boat yard. As a result, he sustained an acute rupture of certain muscles which attached to his right kneecap and surgical repair of this injury was performed the following day. On May 18, 1978, while recuperating at home, the decedent succumbed to a massive pulmonary thrombosis, secondary to the operative intervention. After a jury trial, a verdict was rendered in favor of the plaintiffs, apportioning fault equally between both defendants. Damages were awarded in the sum of $45,000 upon the cause of action for pain and suffering, and $1,304,864 for wrongful death. One of the issues raised on this appeal relates to plaintiffs' use of an expert witness, who testified to matters not contained within their bill of particulars. Our concern is the propriety of the use of this witness and the permissibility in this case of a variance between the pleadings, as amplified by the particulars, and the proof offered at trial. In paragraph 3 of their bill of particulars, plaintiffs alleged that defendants "were negligent in that they maintained the * * * wooden rampway in a broken, defective and dangerous condition * * * [and] constructed [it] * * * in an improper and careless manner"; "[i]n particular * * * there was no support at the bottom of the wooden rampway, thus allowing a sagging to occur. In addition to the sagging, the constant use of the wooden rampway rounded the edges of the lower wooden planks. This worn, broken and defective condition was extremely hazardous and dangerous" (emphasis supplied). Early in the trial, upon their direct case, plaintiffs introduced into evidence photographs of

the wooden ramp which showed a splintering of one of the horizontal planks in the lower part of that structure, and also spaces of varying widths between the planks. The photographs further demonstrated that the ramp had no siderails. Over the objections of defense counsel, Trial Term permitted an expert witness, Malcomb Newman, to testify for plaintiffs. Defense counsel argued that this expert's testimony was unnecessary, prejudicial and speculative in view of the fact that the photographs of the site had already been admitted in evidence, the condition of the ramp at the time of the incident had been described by lay witnesses and, further, an understanding of the facts involved and an ability to determine the issues were clearly within the experience, observation and knowledge of a jury of laymen. Trial Term allowed the expert's testimony "as to the conformity or lack of conformity with good practice in the construction, installation and maintenance of the ramp". It did not, however, indicate whether such testimony was to be limited to the defects alleged in the bill of particulars. Thereupon (and over defendants' objection on the ground, *inter alia,* of preclusion by the limited assertions of the bill of particulars) plaintiffs' expert testified that the ramp grade was too steep because its angle was 2.4 in 10, or 24%, rather than a permissible maximum of 1 in 10, or 10%, that there was a sudden further increase of the slope near the bottom of the ramp, and that there were no handrails, all of which conditions were contrary to good custom and practice from a structural and construction viewpoint. Defendants submitted no expert testimony. Referring to this and also to the steepness of the ramp and the absence of handrails, plaintiffs' counsel stated upon summation: "There are standards for ramps * * * Did you hear any expert from the defendants come in here? Did they have anybody come in here and say that is a good ramp? There is nothing wrong with that ramp? You didn't hear any testimony. The reasons for that is it wasn't a good ramp. It wasn't built according to safe ramps. *It should have had handrails.* What could handrails cost? Eighty bucks? If it had handrails Mr. Sharkey may not have died. A simple thing like that, that is all it took * * * You know, if you look at these pictures, pictures are worth a thousand words. Nails sticking up, *sloping,* all in this ramp" (emphasis supplied). Further, plaintiffs' counsel, projecting the specific defects to which the decedent could have testified if he were alive, included the following: "maybe it was just too steep for me". The court in its charge instructed the jury that it must consider the expert's opinion and also called attention to the fact that the inclined rampway had no handrails. Plaintiffs neither moved prior to or during trial for leave to amend the bill of particulars, nor moved at trial to conform the bill to the proof adduced. (We note that the amended complaint alleged no more than the generality that defendants constructed and continued to maintain the ramp "in a defective condition".) As stated by this court in *Bergman v General Motors Corp.* (74 AD2d 886), "the object of a bill of particulars is to amplify the pleadings, limit the proof, and prevent surprise at trial. Furthermore, a party is entitled to particulars of his specific acts where such acts are claimed to be negligent". However, where there is a variance between the pleadings, as amplified by the bill of particulars, and the proof adduced at trial, the trial court has the power to exercise its discretion and permit amendment of the pleadings to conform them to the evidence, absent a showing of prejudice to the opposing party (see CPLR 3025, subd [c]; *Dittmar Explosives v A. E. Ottaviano, Inc.,* 20 NY2d 498; *Antonetti v City of Syracuse,* 52 AD2d 742, mot for lv to app den 39 NY2d 711). A variance may be disregarded unless it can be said to have misled an adversary and occasioned prejudice (see *Noce v Kaufman,* 2 NY2d 347). A variance is prejudicial where the matters pleaded are such that an adversary could not have been reasonably expected to have prepared for the variance at trial (Siegel, Practice Commentaries, McKinney's Cons Laws of

NY, Book 7B, CPLR C3025:15, p 486). Where there is such a variance an adverse party has the right to insist upon the primacy of the bill of particulars (Siegel, NY Prac, § 242; see *Mammarella v Consolidated Edison Co.*, 44 AD2d 571). Here, although the bill of particulars stated as its generalized conclusion that the ramp was constructed and maintained in an improper and careless manner, it specifically particularized that the bottom of the structure was unsupported, thus permitting sagging to occur, and that the edges of the lower wooden planks were rounded. It then stated the further conclusion that "[t]his worn, broken and defective condition was extremely hazardous and dangerous". This bill of particulars apparently misled defendants into believing that they needed no expert of their own since the question of whether the sagging of the bottom of the ramp and the condition of the planks constituted dangerous conditions was seemingly within the experience, observation and knowledge of a jury of laymen (see *Vispetto v Bassük,* 41 AD2d 958, 959). Nevertheless, the court's denial of defendants' motion to bar the expert testimony proffered by plaintiffs is not, in itself, ground for reversal, since it was within the range of the trial court's discretion to conclude that expert testimony would be appropriate and of some assistance, even as to the limited allegations of the bill of particulars (see *Goldwater v Ginsburg,* 414 F2d 324, 343-344, cert den 396 US 1049, reh den 397 US 978). However, even if defendants' counsel could have foreseen the possibility of the court permitting expert testimony on plaintiffs' behalf, they could not have been reasonably expected to have been prepared for the eventuality that the expert would be permitted to testify as to defects that were in no way alleged in the bill of particulars. For example, instead of merely testifying as to the worn and sagging condition of the ramp, the expert would also testify as to the slope of that structure and the need for handrails. Had the alleged excessive steepness of the incline and the need for handrails urged at trial been delineated in the bill of particulars, the probability is overwhelming that, given the technical nature and scope of such matters, defendants would have produced their own expert. This is particularly so because this death action involves a 48-year-old man who was earning $66,000 a year when he died, and whose widow had a life expectancy of 33.4 years. Accordingly, it is clear that under the facts and circumstances of this case, defendants were misled and suffered prejudice when plaintiffs were permitted to offer proof of negligence beyond the confines of their particulars and there should be a new trial. We have examined defendants' remaining contentions and find them to be without merit. Lazer, J. P., Gulotta and Boyers, JJ., concur.

Brown, J., dissents and votes to affirm the judgment, with the following memorandum: I do not believe a new trial is warranted herein. In my view the bill of particulars adequately advised the defendants that the over-all manner in which the ramp was constructed and maintained constituted negligence and that, under the circumstances, the defendants could have reasonably anticipated the proof at trial to encompass such matters as the alleged excessiveness of the slope and the lack of handrails. Moreover, since the injured party was not available to testify as to the precise condition that caused him to fall on the ramp, the defendants should have expected that plaintiffs' case would put into issue the over-all design and maintenance of the ramp. That being the case, even if one were to argue that the bill of particulars did not encompass the alleged defects testified to by the expert witness, the variance between the pleadings and proof was not such as would mislead or prejudice the defendants and thus might properly be disregarded (see *Noce v Kaufman,* 2 NY2d 347) and the pleadings amended to conform to the evidence (see *Dittmar Explosives v A. E. Ottaviano, Inc.,* 20 NY2d 498; CPLR 3025, subd [c]).