■ STATE OF NEW YORK et al., Respondents, v REYNARD BARONE et al., Appellants, et al., Defendants.—In an action seeking, inter alia, a permanent injunction restraining the defendants from operating a landfill in Tuxedo, New York, the defendants Reynard Barone and Sarkis Khourouzian appeal, as limited by their brief, (1) from so much of an order of the Supreme Court, Orange County (Hickman, J.), dated July 22,

1988, as directed that they post a bond with the New York State Department of Environmental Conservation, and (2) from so much of a judgment of the same court entered August 25, 1988, as directed that the amount of the bond to be posted with the State be in the sum of $4,500,000, and that the bond be posted within 10 days.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is affirmed insofar as appealed from; and it is further,

Ordered that the plaintiffs are awarded one bill of costs.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (see, Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see, CPLR 5501 [a] [1]).

The defendants-appellants herein are the owners of a 12-acre site located on Route 17 in the Town of Tuxedo, New York. Desirous of having their land filled to the level of Route 17, they entered into a one-year contract with the defendant Material Transport Services (hereinafter MTS) a company engaged in the transport of dismantled building structures. After Barone consented to and approved an engineer's report detailing the specifications of the materials to be used in the landfill, work began in March 1987. On March 18, 1987, the site was inspected by an engineer with the Department of Environmental Conservation (hereinafter DEC) who found materials not in conformity with a construction and debris site as defined in 6 NYCRR 360.1 (d) (12). This engineer met with Barone on March 24, 1987, to inform him that the site was not in compliance and that if he failed to obtain a permit the site would have to be closed. The DEC notified Barone by letter dated April 2, 1987 that four warnings had already been issued and it stated that the solid waste facility was not an exempt construction and demolition "C & D" facility. It concluded by stating that financial sanctions would be imposed if the dumping did not cease.

The appellants nonetheless continued their operation until October 1987 when the DEC moved for a preliminary injunction based upon, inter alia, the noxious odors emanating from the area. A temporary restraining order issued and following a lengthy hearing, the restraining order was continued. The parties stipulated that the site would cease operations until a

permit was obtained from the DEC and, following a trial on the issue of the posting of a bond to ensure proper closure of the site, the court concluded that under the circumstances, the defendants were to post a bond in the sum of $4,500,000 as security to ensure compliance with future DEC determinations. The court also directed that the matter be remitted to the DEC for findings of fact relative to the closure of the landfill and a determination of the extent of the environmental impact.

Initially we find that the court acted within its jurisdiction in requiring the posting of the bond *(see,* ECL 27-1313 [5] [a]; 71-2727 [2]; 6 NYCRR 360.6; *Flacke v Onondaga Landfill Sys.,* 69 NY2d 355, 364). We note that the imposition of this condition under the circumstances of this case, where the defendants had previously acted in violation of a prior court directive and had failed to comply with the conditions directed by the DEC, was a proper measure to assure that the defendants and not the taxpayers would eventually bear the cost of the closure of this facility.

With respect to the amount of the bond, the record reveals that the expert called by the DEC gave detailed testimony that the cost of closing this facility was a minimum of $4,500,000 based upon his evaluation of the six factors involved. This expert further testified that if subsequent tests showed a positive threat to the environment these costs would be significantly increased. Although the appellants' attorney conducted an extensive cross-examination of this witness, the appellants offered no documentary evidence to refute this figure nor did they proffer any experts to invalidate the figure arrived at by the DEC expert despite being given every opportunity to do so. As such, the court properly set the amount of the bond at $4,500,000 which was the stated minimum cost of closure.

We reject the appellants' argument that as landowners they cannot be held liable for the acts committed by their contractor. The evidence contains ample evidence that the appellant landowners were actively involved in the operation of the landfill and were aware of the problems inherent in the methodology involved in the landfill. Additionally, as owners of the "facility" liability could properly be imposed upon them if it is decided by the DEC that culpability on their part is present *(see,* 6 NYCRR 360.1 [d] [50]; 360.8 [a] [21]; 42 USC § 9607 [b] [3]; *State of New York v Shore Realty Corp.,* 759 F2d 1032). Brown, J. P., Eiber, Kooper and Balletta, JJ., concur.